IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

JAMES ADAMS,

    Plaintiff,                                          Case No. 3:14-cv-286

vs.

COMMISSIONER OF                           Magistrate Judge Michael J. Newman
SOCIAL SECURITY,                            (Consent Case)

    Defendant.

**DECISION AND ENTRY: (1) REVERSING THE ALJ'S NON-DISABILITY FINDING AS UNSUPPORTED BY SUBSTANTIAL EVIDENCE; (2) REMANDING THIS CASE TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; AND (3) TERMINATING THIS CASE ON THE COURT'S DOCKET**

This Social Security disability benefits appeal is presently before the undersigned for disposition based upon the parties' consent. Doc. 4. At issue is whether the Administrative Law Judge ("ALJ") erred in finding Plaintiff not "disabled" and therefore unentitled to Disability Insurance Benefits ("DIB"). This case is before the Court upon Plaintiff's Statement of Errors (doc. 8), the Commissioner's memorandum in opposition (doc. 9), Plaintiff's reply (doc. 10), the administrative record (doc. 7),[1] and the record as a whole.

---

[1] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

I.

A.   **Procedural History**

Plaintiff filed alleging a disability onset date of August 1, 2006, which he later amended to December 30, 2010.  PageID 64, 81-82, 229-35.  Plaintiff claims disability as a result of a number of impairments including, *inter alia*, ischemic heart disease[2] and obesity.  PageID 66.

After initial denials of his application, Plaintiff received a hearing before ALJ Jessica Inouye.  PageID 80-121.  The ALJ issued a written decision on April 10, 2013 finding Plaintiff not disabled.  PageID 64-73.  Specifically, the ALJ's findings were as follows:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2010.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of December 30, 2010 though his date last insured of December 31, 2010 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: ischemic heart disease and obesity (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity ["RFC"] to perform light work as defined in 20 CFR

---

[2] Ischemic heart disease is also known as coronary artery disease, which is "a blockage or narrowing (stenosis) of the arteries that supply blood to the heart muscle, often due to a buildup of fatty plaque inside the arteries."  Johns Hopkins Medicine Heart & Vascular Institute, *Conditions We Treat: Coronary Artery Disease (Ischemic Heart Disease),* Hopkinsmedicine.org, http://www.hopkinsmedicine.org/heart_vascular_institute/conditions_treatments/conditions/coronary_artery.html (last visited March 7, 2016).

        404.1567(b)[3] except only frequent stooping and avoid concentrated exposure to pulmonary irritants.

6. Through the last date insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born [in] 1959 and was 51 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404.1563).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Throughout the date last insured, considering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from December 30, 2010, the alleged onset date, through December 31, 2010, the date last insured (20 CFR 404.1520(g)).

PageID 66-72.

    Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 49-51. Plaintiff then filed this timely appeal. *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir.

---

[3] The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy depending on the physical exertion requirements. 20 C.F.R. § 404.1567. Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." *Id.* § 404.1567(b). An individual who can perform light work is presumed also able to perform sedentary work. *Id.* Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.* § 404.1567(a).

2007) (noting that, "[u]nder the Federal Rules of Appellate Procedure, [claimant] had 60 days from the Appeals Council's notice of denial in which to file his appeal").

### B. Evidence of Record

In her decision, the ALJ set forth a detailed recitation of the underlying medical evidence in this case, to which neither Plaintiff nor the Commissioner object. PageID 66-72; *see* docs. 8, 10. Accordingly, except as otherwise noted in this Decision and Entry, the undersigned incorporates the ALJ's recitation of the relevant evidence.

## II.

### A. Standard of Review

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the Commissioner will not be upheld where the [SSA] fails to follow its own regulations and where

4

that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for DIB benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin*, 475 F.3d at 730, the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.*, 181 F.Supp.2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing that he or she is disabled under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

5

**III.**

In his Statement of Errors, Plaintiff argues that the ALJ erred: (1) in her Listings analysis at Step Three of the sequential benefits evaluation; (2) in weighing the medical opinions of his treating physician, Michael S. McKee, M.D.; and (3) by failing to consider medical evidence after his date last insured ("DLI"). Doc. 8 at PageID 541-52.

**A.    The Listings**

There are potentially two Listings at issue here -- § 4.02 for Chronic Heart Failure, and § 4.04 for Ischemic Heart Disease. The ALJ specifically concluded that Plaintiff does not meet or equal Listing § 4.04, PageID 67, and Plaintiff does not challenge the ALJ's conclusion in this regard. *See* doc. 8 at PageID 541-45. That issue is therefore not before the Court on appeal. Instead, Plaintiff argues the ALJ erred at Step Three by failing to evaluate whether his heart condition meets or equals Listing § 4.02. *Id.*

The Listing of Impairments "describes impairments the SSA considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 653 (6th Cir. 2009) (citing 20 C.F.R. § 404.1525(a)) (internal quotations omitted). An ALJ is not required to "address every listing" or to "discuss listings that the applicant clearly does not meet." *Smith-Johnson,* 579 F. App'x 426, 432 (6th Cir. 2014) (citations omitted). However, if the record evidence raises a "substantial question" regarding whether a plaintiff meets a listing, an ALJ's failure to discuss the relevant listing constitutes reversible error. *Id.*; *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011). To meet this standard, the "claimant must point to specific evidence that demonstrates he [or she] reasonably could meet or equal every requirement of the listing." *Smith-Johnson,* 579 F. App'x at 432 (citations omitted).

Listing § 4.02 provides as follows:

4.02 Chronic heart failure while on a regimen of prescribed treatment, with symptoms and signs described in 4.00D2. The required level of severity for this impairment is met when the requirements in both A and B are satisfied.

(A)  Medically documented presence of one of the following:

1.  Systolic failure (see 4.00D1a(i)), with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure); or

2.  Diastolic failure (see 4.00D1a(ii)), with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure);

(B)  Resulting in one of the following:

1.  Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain, or complete activities of daily living in an individual for whom an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; or

2.  Three or more separate episodes of acute congestive heart failure within a consecutive 12-month period (see 4.00A3e), with evidence of fluid retention (see 4.00D2b(ii)) from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room treatment for 12 hours or more, separated by periods of stabilization (see 4.00D4c); or

3.  Inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less due to:

(a) Dyspnea, fatigue, palpitations, or chest discomfort; or

7

> (b) Three or more consecutive premature ventricular contractions (ventricular tachycardia), or increasing frequency of ventricular ectopy with at least 6 premature ventricular contractions per minute; or
> (c) Decrease of 10 mm Hg or more in systolic pressure below the baseline systolic blood pressure or the preceding systolic pressure measured during exercise (see 4.00D4d) due to left ventricular dysfunction, despite an increase in workload; or
>
> (d) Signs attributable to inadequate cerebral perfusion, such as ataxic gait or mental confusion.

20 C.F.R., Pt. 404, Subpt. P, App.1, § 4.02.

Here, although the ALJ did not specifically mention or discuss Listing § 4.02, such omission is not error because Plaintiff points to no evidence demonstrating that he reasonably could meet each requirement of the Listing. *Smith-Johnson,* 579 F. App'x at 432. Plaintiff notes only that he had a "highly abnormal" echocardiographic and ejection fractions of less than 25 percent, 28 percent, and approximately 30 percent. Doc. 8 at PageID 541. To the extent that Plaintiff contends that these ejection fraction readings meet § 4.02(A)(1), the Court notes that all such evidence was generated during Plaintiff's mid-February 2011 hospitalization -- not, as required by the Listing, during a period of stability. PageID 320-23. Plaintiff makes no further argument concerning any of the requirements of Listing § 4.02. *See* doc. 8 at PageID 541-45. Accordingly, the Court overrules Plaintiff's first assignment of error.[4] *See Stidham v. Astrue*, No. 3:10-cv-351, 2011 WL 2118076, at *6 (S.D. Ohio Apr. 14, 2011) (finding no error at Step

---

[4] Plaintiff also briefly argues that "the ALJ failed to consider [his] obesity in her Step Three analysis," but fails to point to any evidence demonstrating that he satisfies the criteria of Listing § 4.02 -- or any other Listing -- regardless of whether his obesity is considered along with his cardiac condition. Doc. 8 at PageID 545; *see Moran v. Colvin*, No. 14C1634, 2015 WL 4148716, at *11 (N.D. Ill. July 9, 2015). However, in light of the undersigned's conclusion that the non-disability finding must be reversed due to the ALJ's assessment of Dr. McKee's opinion, *see infra*, on remand the ALJ shall consider the effect of Plaintiff's obesity at Step Three of the sequential benefits analysis.

8

Three when the plaintiff "may have satisfied some of the criteria for Listing [§] 4.02, [but] did not present evidence showing that he met or equaled the Listing").

### B. Treating Physician

Plaintiff next argues the ALJ erred in giving insufficient weight to the two opinions of his treating physician, Dr. McKee. Doc. 8 at PageID 545-51. "[T]he Commissioner's regulations establish a hierarchy of acceptable medical source opinions[.]" *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013). Treating physicians and psychologists top the hierarchy. *Id*. "Next in the hierarchy are examining physicians and psychologists, who often see and examine claimants only once." *Id*. "[N]on-examining physicians' opinions are on the lowest rung of the hierarchy of medical source opinions." *Id*. "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual [claimant] become weaker." *Id*. (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).

"An ALJ is required to give controlling weight to 'a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s)' if the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013) (citation omitted) (alterations in original). This requirement is known as the "treating physician" rule. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citation omitted). Greater deference is given to treating source opinions "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]" 20 C.F.R. § 404.1527(c)(2); *see also Blakley*, 581

9

F.3d at 406. Thus, an ALJ must give controlling weight to a treating source if the ALJ finds the treating physician's opinion well-supported by medically acceptable evidence and not inconsistent with other substantial evidence in the record. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Closely associated with the treating physician rule is the "good reasons rule," which "require[s] the ALJ to always give good reasons in [the] notice of determination or decision for the weight given to the claimant's treating source's opinion." *Blakley*, 581 F.3d at 406-07. "Those good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Id*.

Thus, when the ALJ declines to give controlling weight to a treating physician's assessment, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Id*. at 406; *see also* 20 C.F.R. § 404.1527(c).[5] In addition, unless the opinion of the treating source is entitled to controlling weight, an ALJ must "evaluate all medical opinions according to [these] factors, regardless of their source[.]" *Walton v. Comm'r of Soc. Sec.*, No. 97-2030, 1999 WL 506979, at *2 (6th Cir. June 7, 1999).

Dr. McKee's treatment relationship with Plaintiff began in February 2011, during Plaintiff's hospitalization for his cardiac condition. PageID 317-18. In August 2011 he opined

---

[5] In essence, "opinions of a treating source . . . must be analyzed under a two-step process, with care being taken not to conflate the steps." *Cadle v. Comm'r of Soc. Sec.*, No. 5:12 CV 3071, 2013 WL 5173127, at *5 (N.D. Ohio Sept. 12, 2013). Initially, "the opinion must be examined to determine if it is entitled to controlling weight" and "[o]nly if . . . the ALJ does not give controlling weight to the treating physician's opinion is the opinion subjected to another analysis based on the particulars of" 20 C.F.R. § 404.1527. *Id.*

that "based on [limited] known info[rmation,] [Plaintiff] should be considered disabled" unless his clinical status changes. PageID 315-16. In December 2012 -- after treating Plaintiff on twelve occasions -- Dr. McKee opined that Plaintiff can lift/carry fifteen pounds frequently; stand/walk for less than two hours in a workday; and sit for six hours in a workday. PageID 532-33. Such limitations translate into a restriction to sedentary work activity. *See* 20 C.F.R. § 404.1567(a); Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983) (at the "sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours"). Although typically an individual who can perform sedentary work is deemed "not disabled," given Plaintiff's age and other relevant vocational factors, it is arguable that a sedentary work finding would deem Plaintiff disabled under the Medical-Vocational Guidelines ("Grid").[6] *See* 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 201.09, 201.10; PageID 71, 118.

Additionally, Dr. McKee checked "yes" in response to a question asking whether it is "reasonable to expect that these limitations existed prior to December 31, 2010[,]" -- *i.e.*, Plaintiff's DLI -- yet stated that he "would advise info[rmation]/input from this patient's cardiologist." PageID 534. Dr. McKee also checked "yes" in response to the question "is it probable that the severity of [Plaintiff's] heart condition as it existed on February 17, 201[1] also existed in similar severity before December 31, 2010." *Id.*

---

[6] The ALJ considers the Grid "in the fifth and final stage of the disability determination, after it has been determined that the claimant has not met the requirements of a listed impairment but is nevertheless incapable of performing past relevant work." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). The Grid considers the vocational factors of age, education, work experience, and maximum sustained work capability. See 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 200.00(a). A plaintiff's "maximum sustained work capability" is categorized as one of five "exertional levels" -- including the sedentary exertional level -- and is defined as "[t]he highest functional level a person can perform on a regular work basis[.]" SSR 83-10, 1983 WL 31251, *6.

11

The ALJ gave little weight to the August 2011 opinion "in light of Dr. McKee's limited knowledge of claimant's healing, the fact that the entirety of the opinion rests upon treatment provided after the [DLI], and the conclusory nature of the opinion without specifically detailed limitations." PageID 70. As to the December 2012 opinion, the ALJ found that:

> it presents several indications of unreliability. For example, Dr. McKee did not explain how the claimant's listed medical impairments connect to the designated limitations. As well, Dr. McKee appears to be merely guessing about the severity of the claimant's functional limitations prior to treatment of a cardiac condition in February 2011. Moreover, the form used was not designed for objectivity, but rather for verification of some preconceived suggested conclusions about the claimant's allegedly diminished health and fitness. It was intended to further the claimant's litigation interests more than his medical ones. The fact that it allows for negative check-off responses (i.e., ones that don't help the claimant's case) as well as positive ones does not change the fundamentally suggestive construction of the forms.

*Id.*

The undersigned finds no error in regard to the ALJ's analysis of Dr. McKee's 2011 opinion,[7] but agrees with Plaintiff that the ALJ erred in analyzing his 2012 opinion. Initially, the undersigned notes that the ALJ failed to mention the "controlling weight" concept and made no specific finding -- and provided no analysis -- as to whether Dr. McKee's opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with other substantial evidence in the case record[,]" *i.e.*, the factors for determining whether a treating physician's opinion is entitled to controlling weight. *See* 20 C.F.R. § 404.1527(c)(2). Because of the ALJ's failure in this regard, the Court cannot determine whether she undertook the "two-step inquiry" required when analyzing treating source opinions. *See supra* note 5; *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376-78 (6th Cir.

---

[7] Whether a person is disabled within the meaning of the Social Security Act is an issue reserved to the Commissioner, and a treating physician's opinion -- that his or her patient is disabled -- is not "give[n] any special significance." 20 C.F.R. § 404.1527; *see Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (stating that "[t]he determination of disability is ultimately the prerogative of the Commissioner, not the treating physician").

2013). The lack of explanation regarding the "controlling weight [analysis] hinders a meaningful review of whether the ALJ properly applied the treating-physician rule that is at the heart of this regulation." *Gayheart*, 710 F.3d at 377 (referencing 20 C.F.R. § 404.1527(c)(2)). Such failure amounts to reversible error. *See Aytch v. Comm'r of Soc. Sec.*, No. 3:13-cv-135, 2014 WL 4080075, at *5 (S.D. Ohio Aug. 19, 2014) (citation omitted).

Even assuming, *arguendo*, that the ALJ properly conducted a controlling weight analysis -- which the undersigned concludes she did not -- the ALJ failed to provide good reasons for the ultimate weight given to Dr. McKee's 2012 opinion.[8] First, insofar as the ALJ discounted Dr. McKee's opinion by stating he was "merely guessing" about the extent of Plaintiff's functional limitations prior to the start of their treatment relationship in February 2011, the Court notes that the ALJ gave "great weight" to the opinions of record reviewing physicians Gary Hinzman, M.D. and Paul Morton, M.D., who never personally examined Plaintiff at any time. PageID 69, 129, 140-41. The "regulations do not allow the application of greater scrutiny to a treating-source opinion as a means to justify giving such an opinion little weight." *Gayheart,* 710 F.3d at 380. In fact, "[a] more rigorous scrutiny of the treating-source opinion than the nontreating and nonexamining opinions is precisely the inverse of the analysis that the regulation[s] require[.]" *Id*. Because the ALJ's critique -- that Dr. McKee's opinion is speculative because he was not treating Plaintiff for the entirety of the time period covered by his opinion -- applies equally to the opinions of the state agency physicians, such critique is not a "good reason" for discounting

---

[8] Although not discussed by the ALJ in regard to Dr. McKee's 2012 opinion, to the extent that she discounted such opinion because it was provided after Plaintiff's DLI, the Sixth Circuit has noted that "evidence of [a claimant's] medical condition after [the] insurance cutoff must be considered to the extent it illuminates [the] claimant's health before that date." *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (citation omitted). Thus, while Plaintiff must establish an onset of disability before his DLI in order to receive benefits, "that does not render any evidence from after [the DLI] de facto irrelevant." *Gabbard v. Comm'r of Soc. Sec.*, No. 3:11-cv-426, 2012 WL 5378747, at *12 (S.D. Ohio Oct. 30, 2012).

the weight accorded to Dr. McKee's 2012 opinion. *See Hollon v. Comm'r of Soc. Sec.*, No. 3:14-cv-162, 2015 WL 4592206, at *5 (S.D. Ohio July 29, 2015).

Second, the fact that Dr. McKee's opinion was on a form generated by Plaintiff's attorney -- framed to address the issues pertinent to Plaintiff's case -- is not a good reason to reject the entirety of the limitations contained therein. It is Plaintiff's burden to establish his entitlement to DIB, *Key*, 109 F.3d at 274, which includes building the record in this case that, apart from Dr. McKee's opinions, contains no other opinion evidence from a doctor who treated or examined Plaintiff. *See* PageID 69-70.

Finally, insofar as the ALJ critiqued Dr. McKee's failure to explain the connection between his limitations and Plaintiff's impairments, *see* PageID 70, this criticism is not relevant to a controlling weight determination and, instead, is one considered at the second step of the "two-step inquiry" required when analyzing treating source opinions. *See* 20 C.F.R. § 404.1527(c)(3) (stating that, after declining to afford controlling weight to a treating source, and in determining the ultimate weight given, "[t]he better an explanation a source provides for an opinion, the more weight we will give that opinion").

Based upon the foregoing, the undersigned finds that the ALJ failed to properly assess and give good reasons, supported by substantial evidence, for discounting Dr. McKee's 2012 opinion. *See Blakley*, 581 F.3d at 409-10 (holding that "the Commissioner must follow his own procedural regulations in crediting medical opinions"). Accordingly, the ALJ's non-disability finding is reversed.

### C.     Post-DLI Evidence

Finding remand warranted based on the ALJ's assessment of the opinion evidence, the undersigned makes no finding in regard to Plaintiff's final assignment of error. On remand, the

ALJ shall consider evidence from after Plaintiff's DLI "to the extent it illuminates [his] health before that date." *Higgs,* 880 F.2d at 863 (citation omitted).

### IV.

When the ALJ's non-disability determination is unsupported by substantial evidence, the Court must determine whether to remand the matter for rehearing or to order the award of benefits. Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994). The Court may only award benefits where proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where proof of disability is overwhelming. *Id*.

Here, evidence of disability is not overwhelming. Accordingly, the undersigned concludes that remand for further proceedings is necessary so the ALJ can reasonably and meaningfully weigh all opinion evidence; conduct a Listings analysis while considering any and all effects of Plaintiff's obesity; consider all relevant post-DLI evidence; and determine Plaintiff's RFC and disability status anew, utilizing the services of a medical expert, if necessary.

### V.

For the foregoing reasons: (1) the Commissioner's non-disability finding is found unsupported by substantial evidence, and **REVERSED**; (2) this matter is **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and (3) this case is **TERMINATED** on the docket.

**IT IS SO ORDERED**.

Date: March 7, 2016                              *s/ Michael J. Newman*
                                                 Michael J. Newman
                                                 United States Magistrate Judge